# EXHIBIT A



1   THE WESTON FIRM
2   GREGORY S. WESTON (239944)
    JACK FITZGERALD (257370)
3   888 Turquoise Street
    San Diego, CA  92109
4   Telephone:  858 488 1672
5   Facsimile:   480 247 4553
    greg@westonfirm.com
6   jack@westonfirm.com
7
8   BECK & LEE BUSINESS TRIAL LAWYERS
    JARED H. BECK (233743)
9   ELIZABETH LEE BECK (233742)
10  28 West Flagler Street, Suite 555
    Miami, FL 33130
11  Telephone:  305 789 0072
12  Facsimile:   786 664 3334
    jared@beckandlee.com
13  elizabeth@beckandlee.com
14  Counsel for Plaintiffs
15                     UNITED STATES DISTRICT COURT
16                     CENTRAL DISTRICT OF CALIFORNIA
17  EVANGELINE RED and RACHEL          Case No:  CV10-01028 GW(AGRX)
18  WHITT, on Behalf of Themselves and
    All Others Similarly Situated,
19                                     CLASS ACTION
20                         Plaintiffs,  COMPLAINT FOR VIOLATIONS
21                                      OF THE LANHAM ACT,
            v.                          UNFAIR COMPETITION LAW,
22                                      FALSE ADVERTISING LAW,
23  KRAFT FOODS INC., KRAFT FOODS      AND CONSUMER LEGAL
    NORTH AMERICA, and KRAFT           REMEDIES ACT
24  FOODS GOLBAL, INC.,
25                                      DEMAND FOR JURY TRIAL
                           Defendants.
26
27
28  ──────────────────────────────────────────────────────
    COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW,
    FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1   Plaintiffs Evangeline Red and Rachel Whitt ("Plaintiffs"), on behalf of

2   themselves, all others similarly situated, and the general public, by and through

3   undersigned counsel, hereby sue Defendants Kraft Foods Inc., Kraft Foods North

4   America, and Kraft Foods Global, Inc. and, upon information and belief and

5   investigation of counsel, allege as follows:

6   **JURISDICTION AND VENUE**

7   1.      This Court has original jurisdiction over this action under 28 U.S.C.

8   §1331 and 15 U.S.C. §1121.

9   2.      This Court also has original jurisdiction under 28 U.S.C. §1332(d)(2)

10   (The Class Action Fairness Act) because the matter in controversy exceeds the sum

11   or value of $5,000,000 exclusive of interest and costs and more than two-thirds of

12   the members of the Class reside in states other than the state of which Defendants

13   are citizens.

14   3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because

15   Plaintiffs reside in and suffered injuries as a result of Defendants' acts in this

16   district, many of the acts and transactions giving rise to this action occurred in this

17   district, and Defendants (1) are authorized to conduct business in this district and

18   has intentionally availed itself of the laws and markets of this district through the

19   promotion, marketing, distribution, and sale of its products in this district; (2)

20   reside in this district; and (3) are subject to personal jurisdiction in this district.

21   **INTRODUCTION**

22   4.      Plaintiffs repeatedly purchased packaged food products made by Kraft

23   during the class period defined herein.

24   5.      Kraft falsely markets Ritz Crackers, Original Premium Saltine

25   Crackers, Ginger Snaps, and Teddy Grahams (the "Kraft Products") as healthful

26

27

28

---

1

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1   despite that they have dangerous levels of artificial *trans* fat, a toxic food additive

2   banned in many parts of the world.

3       6.      Kraft uses various methods to represent the Kraft Products, which

4   contain artificial *trans* fat, as not harmful to the cardiovascular system.

5       7.      Plaintiffs seek an order that compels Kraft to (1) cease marketing the

6   Kraft Products using the misleading tactics complained of herein, (2) conduct a

7   corrective advertising campaign, (3) restore the amounts by which Kraft was

8   unjustly enriched, and (4) destroy all misleading and deceptive materials and

9   products.

10                                **PARTIES**

11      8.      Plaintiffs Evangeline Red and Rachel Whitt are residents of California

12  who repeatedly purchased packaged Kraft foods containing artificial *trans* fat

13  during the class period defined below.

14      9.      Defendant Kraft Foods Inc., is a Delaware corporation with its

15  principal place of business in California. Kraft Foods Inc. is a producer and

16  manufacturer of the Kraft Products.

17      10.     Defendant Kraft Foods North America is a Delaware corporation with

18  its principle place of business in California. Kraft Foods North America is a private

19  subsidiary of Kraft Foods Inc. and a producer and manufacturer of the Kraft

20  Products.

21      11.     Defendant Kraft Foods Global, Inc. is a Delaware corporation with its

22  principle place of business in California. Kraft Foods Global, Inc. is a private

23  subsidiary of Kraft Foods Inc. and a producer and manufacturer of the Kraft

24  Products.

25      12.     All Defendants are collectively referred to herein as "Kraft."

26

27

28
                                     2

## SUMMARY OF THE STRONG EVIDENCE OF HEALTH DANGERS
## OF ARTIFICIAL *TRANS* FAT

**Artificial *trans* fat is a manufactured food product whose basic chemical structure is different from natural fat molecules.**

13.     *Trans* fat is naturally found in trace amounts in foods derived from ruminant animals, primarily in cow's milk and red meat.[1] It is also found in small quantities in human breast milk.

14.     Also known as vaccenic acid, natural *trans* fat has never been linked to any negative health effect in human beings and is chemically different than artificial *trans* fat.

15.     Initial studies on rats indicate that consumption of vaccenic acid is beneficial to health.[2]

16.     Artificial *trans* fat, by contrast, is manufactured in an industrial process called hydrogenation, in which hydrogen atoms are added to normal vegetable oil by heating the oil to temperatures above 400 degrees Fahrenheit in the presence of ion donor catalyst metals such as rhodium, ruthenium, and nickel.[3]

17.     The resulting product is known as partially hydrogenated vegetable oil ("PHVO"), and is an ingredient in the Kraft Products and the main source of *trans* fat in the American diet.[4]

18.     PHVO was invented in 1901 and patented in 1902 by German chemist

---

[1] Dariush Mozaffarian *et al., Trans Fatty Acids and Cardiovascular Disease*, 354 New Eng. J. Med. 1601, 1608 (2008).

[2] Ye Wang *et al., Trans-11 Vaccenic Acid Dietary Supplementation Induces Hypolipidemic Effects on JCR:LA-cp Rats*, 138 J. Nutrition 2117 (November 2008).

[3] *See* Alice H. Lichtenstein, *Trans Fatty Acids, Plasma Lipid Levels, and Risk of Developing Cardiovascular Disease*, 95 Circulation 2588, 2588-90 (1997).

[4] *See* Mozaffarian, 354 New Eng. J. Med. at 1608.

3

1  Wilhelm Normann. *Trans* fat molecules chemically differ from the natural fat

2  molecules in other food products, as shown in the illustrations that follow.

3      19.    Natural fat, except the trace amounts of natural *trans* fat from

4  ruminant animals, comes in two varieties: (1) fats that lack carbon double bonds

5  ("saturated fat") and (2) fats that have carbon double bonds with the hydrogen

6  atoms on the same side on the carbon chain ("*cis* fat"). *Trans* fat, however, has

7  double bonds on opposite sides of its carbon chain.

8

9

10

11

12

13

14

15

16



17

18

19

20

21

22

23

24

25

26



27

28

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

**Trans fatty acid**

CH₃ — COOH

● = Hydrogen atom   ● = Carbon atom

20.     PHVO was initially a "wonder product" attractive to the packaged food industry because it combines the low cost of unsaturated *cis* fat with the flexibility and long shelf life of saturated fat. Like *cis* fat, PHVO is manufactured from lower-cost legumes,[5] while saturated fat is derived from relatively expensive animal and tropical plant sources.[6]

21.     Like natural saturated fat, PHVO has a long shelf life, physical solidity, and flavor stability. The industrial process that adds hydrogen ions to normal vegetable oil improves food texture and permits food products to withstand heavy mechanical processing and high temperatures.[7] Given its versatility, PHVO

---

[5] e.g., corn oil, soybean oil, peanut oil
[6] e.g., butter, cream, tallow, coconut oil
[7] *See* Alberto Ascherio *et al.*, *Trans Fatty Acids & Coronary Heart Disease*, 340 New Eng. J. Med. 94, 94-8 (1999). *See also* Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About *Trans* Fat Nutrition Labeling (Update 2006) (2003), *available at* http://www.cfsan.fda.gov/%7Edms/qatrans2.html#fn.

5

1  was recently used in 40 percent of processed packaged foods.[8]

2      22.  Artificial *trans* fat does not exist in nature, and the human body has

3  not evolved to digest it. The same unusual and unnatural chemical structure that

4  gives artificial *trans* fat properties attractive from an industrial perspective makes it

5  highly toxic to human health.

6  **Artificial *trans* fat causes cardiovascular disease, type 2 diabetes, and cancer.**

7      •  **Heart Disease**

8      23.  In a joint Dietary Guidelines Advisory Committee Report, the U.S.

9  Department of Health and Human Services and the U.S. Department of Agriculture

10  recognized **"[t]he relationship between *trans* fatty acid intake and LDL**

11  **cholesterol is direct and progressive, increasing the risk of cardiovascular**

12  **disease."[9]**

13      24.  Food products with artificial *trans* fat harm the heart by "rais[ing] the

14  concentration of the most dangerous form of serum cholesterol (LDL cholesterol)"

15  and "lower[ing] a protective form of serum cholesterol (HDL cholesterol)."[10]

16      25.  The American Heart Association notes **"*trans* fats raise your bad**

17  **(LDL) cholesterol levels and lower your good (HDL) cholesterol levels. Eating**

18  ***trans* fats increases your risk of developing heart disease."[11]**

19      26.  After an extensive evaluation of the scientific literature on the *trans*

20  fat/CHD connection, the FDA concluded:

21

---

22  [8] Mary Carmichael, *The Skinny on Bad Fat*, Newsweek, Dec. 1, 2003, at 66. *See*

23  *also* Kim Severson, *Hidden Killer. It's Trans Fat. It's Dangerous. And It's In*

   *Food You Eat Every Day*, S.F. Chron., Jan. 30, 2002.

24  [9] Dep't of Health & Human Serv. & U.S. Dep't of Agric., 2005 Dietary Guidelines

25  Advisory Committee Report, Section 10 (2005).

   [10] *Id.*

26  [11] Am. Heart Ass'n., *Trans Fat Overview*, *available at*

27  http://www.americanheart.org/presenter.jhtml?identifier=3045792.

28  COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
   ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

...based on the consistent results across a number of the most persuasive types of study designs (i.e., intervention trials and prospective cohort studies) that were conducted using a range of test conditions and across different geographical regions and populations...the available evidence for an adverse relationship between *trans* fat intake and CHD risk is strong.[12]

27.     *Trans* fat raises the risk of CHD more than any other known nutritive product.[13]

28.     Removing 2% of daily calories from *trans* fat from the American diet "would prevent approximately 30,000 premature coronary deaths per year, and epidemiologic evidence suggests this number is closer to 100,0000 premature deaths annually."[14]

29.     A study on the impact of *trans* fatty acids on heart health provides evidence that:

[E]ven the lower estimates from the effects [of PHVO] on blood lipids would suggest that more than 30,000 deaths per year may be due to the consumption of partially hydrogenated vegetable fat. Furthermore, the number of attributable cases of nonfatal coronary heart disease will be even larger.[15]

30.     Since "the adverse effect of *trans* fatty acids is stronger than that of saturated fatty acids," saturated fat consumption would need to be reduced by 10

---

[12] Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About *Trans* Fat Nutrition Labeling.

[13] Mozaffarian, 354 New Eng. J. Med. at 1603.

[14] Alberto Ascherio *et al.*, *Trans Fatty Acids & Coronary Heart Disease*, 340 New Eng. J. Med. 94, 94-8 (1999).

[15] W.C. Willett *et al.*, *Trans Fatty Acids: Are the Effects only Marginal?* 84 Am. J. Pub. Health 722, 723 (1994).

1   percent of caloric intake to have the same impact.[16]

2       31.   "10 to 19 percent of CHD events in the United States could be averted

3   by reducing the intake of *trans* fat."[17]

4       32.   By raising LDL levels and lowering HDL levels, *trans* fat causes a

5   wide variety of dangerous heart conditions, including low flow-mediated

6   vasodilation, coronary artery disease, and primary cardiac arrest.

7       33.   After conducting a crossover diet trial, Danish researchers determined

8   that healthy men and women who maintained a high-*trans* fat diet had 21 percent

9   lower protective HDL levels and 29 percent lower flow-mediated vasodilation

10  ("FMD") than those on a high-saturated fat diet. Since FMD measures the percent

11  increase between the diameter of the artery at ordinary and at maximum dilation,

12  low FMD is "a risk marker of coronary heart disease.[18]

13      34.   Australian researchers observed that heart attack patients possess

14  elevated amounts of *trans* fat in their adipose tissue, strongly linking heart disease

15  with long-term consumption of *trans* fat.[19]

16      35.   By taking blood samples from 179 survivors of cardiac arrest and 285

17  randomly-selected control patients and comparing the top fifth with the bottom

18  fifth of participants by *trans* fat intake, another study published in the American

19  Heart Association's *Circulation* found that the largest consumers of *trans* fat have

20  three times the risk of suffering primary cardiac arrest, even after controlling for a

21   

22  [16] Mozaffarian, 354 New Eng. J. Med. at 1609.

    [17] *See* Mozaffarian, 354 New Eng. J. Med. at 1611.

23  [18] Nicole M. De Roos *et al.*, *Replacement of Dietary Saturated Fatty Acids by*

24  *Trans Fatty Acids Lowers Serum HDL Cholesterol and Impairs Endothelial*
    *Function in Healthy Men and Women*, 21 Am. Heart Assoc. 1233, 1233-37

25  (2001).

    [19] Peter M. Clifton *et al.*, *Trans Fatty Acids In Adipose Tissue And The Food*

26  *Supply Are Associated With Myocardial Infarction*. 134 J. of Nutrition 874, 874-79

27  (2004).

28  COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1  variety of medical and lifestyle risk factors.[20]

2      • **Diabetes**

3      36.  Artificial *trans* fat causes type 2 diabetes.[21]

4      37.  A 14-year study of 84,204 women found that for every 2 percent

5  increase in energy intake from *trans* fat, the relative risk of type 2 diabetes was

6  1.39. In other words, each 2 percent of calories from artificial *trans* fat increases

7  the risk of type 2 diabetes by 39 percent.[22]

8      • **Cancer**

9      38.  *Trans* fat is a known carcinogen shown to cause breast, prostate, and

10  colorectal cancer.

11     39.  A 13-year study of 19,934 French women showed 75 percent more

12  women contracted breast cancer in the highest quintile of *trans* fat consumption

13  than did those in the lowest.[23]

14     40.  In a 25-year study of 14,916 U.S. physicians, the doctors in the

15  highest quintile of *trans* fat intake had over a 100% greater risk of developing

16  prostate cancer than the doctors in the lowest quintile.[24]

17     41.  A study of 1,012 American males observing *trans* fat intake and the

18  risk of prostate cancer found "[c]ompared with the lowest quartile of total trans-

19  fatty acid consumption, the higher quartiles gave odds ratios (ORs) equal to 1.58,"

20

---

21  [20] Rozenn N. Lemaitre *et al.*, *Cell Membrane Trans-Fatty Acids and the Risk of Primary Cardiac Arrest*, 105 Circulation 697, 697-701 (2002).

22  [21] Am. Heart Ass'n, *Trans Fat Overview.*

23  [22] Jorge Salmeron *et al.*, *Dietary Fat Intake and Risk of Type 2 Diabetes in Women*, 73 Am. J. of Clinical Nutrition 1019, 1023 (2001).

24  [23] Véronique Chajès *et al.*, *Association between Serum Trans-Monounsaturated*

25  *Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study.* 167 Am. J. of Epidemiology 1312, 1316 (2008).

26  [24] Jorge Chavarro *et al.*, *A Prospective Study of Blood Trans Fatty Acid Levels and*

27  *Risk of Prostate Cancer.*, 47 Proc. Am. Assoc. of Cancer Research 95, 99 (2006).

9

28

meaning those in the highest quartile are 58% more likely to contract prostate cancer than those in the lowest.[25]

42.    A 600-person study found an 86 percent greater risk of colorectal cancer in the highest *trans* fat consumption quartile than in the lowest.[26]

43.    A 2,910-person study found "trans-monounsaturated fatty acids…were dose-dependently associated with colorectal cancer risk," which showed "the importance of type of fat in the etiology and prevention of colorectal cancer."[27]

44.    The serious health conditions caused by *trans* fat consumption only occur from artificial *trans* fat, not the trace natural *trans* fat found in ruminant sources:

> Of four prospective studies evaluating the relation between the intake of *trans* fatty acids from ruminants and the risk of CHD, none identified a significant positive association, whereas three identified nonsignificant trends toward an inverse association. … [T]he sum of the current evidence suggests that the public health implications of consuming *trans* fats from ruminant products are relatively limited.[28]

**The grave, concrete risks of artificial *trans* fat consumption far outweigh any conceivable benefits of Kraft's conduct.**

45.    There is no health benefit to artificial *trans* fat consumption and "no

[25] Xin Liu *et al.*, *Trans-Fatty Acid Intake and Increased Risk of Advanced Prostate Cancer: Modification by RNASEL R462Q Variant*, 28 Carcinogenesis 1232, 1232 (2007).
[26] L.C. Vinikoor *et al.*, *Consumption of Trans-Fatty Acid and its Association with Colorectal Adenomas*, 168 Am. J. of Epidemiology 289, 294 (2008).
[27] Evropi Theodoratou *et al.*, *Dietary Fatty Acids and Colorectal Cancer: A Case-Control Study*, 166 Am. J. of Epidemiology 181 (2007).
[28] Mozaffarian, 354 New Eng. J. Med. at 1608-1609.

10

1  safe level" of artificial *trans* fat intake. [29]

2      46.    According to the established consensus of the scientific community,

3  consumers should keep their consumption of *trans* fat "as low as possible."[30]

4      47.    As Dariush Mozaffarian, M.D., notes in the New England Journal of

5  Medicine:

> [T]rans fats from partially hydrogenated oils have no intrinsic health
> value above their caloric value. Thus, from a nutritional standpoint,
> the consumption *trans* fatty acids results in considerable potential
> harm but no apparent benefit. ... Thus, complete or near-complete
> avoidance of industrially produced *trans* fat—a consumption of less
> than 0.5 percent of the total energy intake—may be necessary to avoid
> adverse effects and would be prudent to minimize health risks.[31]

12  **_Trans_ fat is so inherently dangerous that it is being banned in an increasing**
13  **number of American states and European countries.**

14      48.    In 2008, California became the first state to ban all restaurant food

15  with  artificial  *trans*  fat,  a  law  affecting  approximately  88,000  eating

16  establishments. *Trans* fats are now banned in restaurants as of January 1, 2010 and

17  on January 1, 2011 will be phased out of retailers.

18      49.    New York City banned all *trans* fat in its 20,000 food establishments

19  in 2006. Similar laws exist in Philadelphia; Baltimore; Stamford, Connecticut; and

20  Montgomery County, Maryland.

21      50.    A 2004 Danish law restricted all foods to under 2 percent of calories

22

23  [29] Food & Nutrition Bd., Inst. of Med., Dietary Reference Intakes For Energy,
24  Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (2005).
25  [30] Food & Nutrition Bd., Inst. of Med., Dietary Reference Intakes For Energy,
26  Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids 424 (2005).
27  [31] Mozaffarian, 354 New Eng. J. Med. at 1609.

11

28

1   from *trans* fat. Switzerland made the same restriction in 2008.[32]

2       51.    After conducting a surveillance study of Denmark's *trans* fat ban,

3   researchers concluded the change "did not appreciably affect the quality, cost or

4   availability of food" and did not have "any noticeable effect for the consumers."[33]

5       52.    In 2006, a *trans* fat task force co-chaired by Health Canada and the

6   Heart and Stroke Foundation of Canada recommended capping *trans* fat content at

7   2 percent of calories for tub margarines and spreads and 5 percent for all other

8   foods. On September 30, 2009, British Columbia became the first province to

9   impose these rules on all restaurants, schools, hospitals, and special events.[34]

10  **Direct consumption of dietary cholesterol is unrelated to heart disease.**

11      53.    By raising bad cholesterol and lowering good cholesterol levels, *trans*

12  fat raises the risk of CHD more than any other known nutritive product.[35] By

13  contrast, dietary cholesterol intake is unrelated to CHD risk.[36]

14      54.    Kraft, however, markets the Kraft Products—which contain

15  dangerous levels of *trans* fat—as "cholesterol free," which thereby misleads

16  consumers by implying a connection between dietary cholesterol intake and

17  ─────────────

18  [32] Andrew Collier, *Deadly Fats: Why Are We still Eating Them?*, The Independent (UK), June 10, 2008.

19  [33] Mozaffarian, 354 New Eng. J. Med. at 1610; *see also* High Levels of Industrially

20  Produced *Trans* Fat in Popular Fast Food, 354 New Eng. J. Med. 1650, 1652 (2006).

21  [34] *Province Restricts Trans Fat in B.C.*, British Columbia Ministry of Healthy

22  Living and Sport Press Release (2009), *available at* http://www2.news.gov.bc.ca/news_releases_2005-2009/2009HLS0013-

23  000315.htm.

    [35] Mozaffarian, 354 New Eng. J. Med. at 1602.

24  [36] Katja L. Esrey *et al.*, *Relationship Between Dietary Intake and Coronary Heart*

25  *Disease Mortality: Lipid Research Clinics Prevalence Follow-up Study*, 49 J. Clin. Epidemiol 2:211, 212-216 (1996). *See also* Barbara Millen Posner *et al.*, *Dietary*

26  *Lipid Predictors of Coronary Heart Disease in Men: The Framingham Study*, 151

27  Arch Intern Med 1181, 1184-86 (June 1991).

                                    12

28  ─────────────

1   disease where none exists.

2   55.   Kraft's "cholesterol free" claims further insinuate that consumption of

3   the Kraft Products is useful for the maintenance of healthy serum cholesterol levels

4   when in fact the consumption of the trans-fat laden Kraft Products negatively

5   impacts serum cholesterol levels. Kraft thus deceives consumers concerned about

6   cardiovascular health into purchasing a product that in fact harms their hearts.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

## SPECIFIC MISREPRESENTTIONS, MATERIAL OMISSIONS, AND DECEPTIVE ACTS

**Teddy Grahams**



14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT





COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT



COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT



COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT





COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

56.   **False and Misleading "Wholesome" Claim:** Kraft labels Teddy Grahams "A fun, wholesome choice for your whole family." In fact, far from wholesome, Teddy Grahams contain artificial trans fat, a toxic ingredient which will cause death and disease for those who regularly consume it.

57.   **Misleading Health Claims:** Kraft misleads consumers into believing that Teddy Grahams products are healthy by making misleading claims on the product packaging such as "A good source of Calcium Iron & Zinc to help support kids' growth and development." Though possibly true, these statements are deceptive in intent and nature: they not only omit the fact that Teddy Grahams contain artificial *trans* fat, but also imply that Teddy Grahams are healthy when in fact they contain a product known to raise one's risk for CHD, cancer, and diabetes.

58.   **Misleading "Smart Choices" Claims:** Kraft labels many varieties of its Teddy Grahams Graham Snacks containing artificial *trans* fat with a label that prominently states "Smart Choices Program." Regardless of what the "Smart Choices Program" refers to, its prominent labeling leads consumers to believe that the product within the packaging is a "smart choice." Teddy Grahams products, however, contain artificial *trans* fat which, far from a "smart choice," will cause heart disease, cancer, and diabetes in many of the children that consume them.

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

**Vegetable Thins**



59.    **Misleading Packaging:** The front label of Vegetable Thins shows images of vegetables and advertises "Made With Real Vegetables."    While possibly true, this statement is misleading because Vegetable Thins contains more partially hydrogenated vegetable oil, a form of artificial *trans* fat, than it does any vegetables.

23

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

**Ritz Crackers Roasted Vegetable**





24

60.   **Misleading Packaging:** The front label of Ritz Crackers Roasted Vegetable shows images of vegetables and advertises "MADE WITH REAL VEGETABLES." While possibly true, this statement is misleading because the product contains more partially hydrogenated vegetable oil, a form of artificial *trans* fat, than it does any vegetables.

61.   **Misleading "No Cholesterol" Claims:** Kraft labels the side of the Ritz Crackers Roasted Vegetable box "No Cholesterol."

62.   As described in detail above, the risk of cardiovascular disease is not related to the consumption of dietary cholesterol, but to the serum levels of LDL cholesterol relative to HDL cholesterol. Kraft's Ritz Crackers Roasted Vegetable contain dangerous levels of artificial *trans* fat, which increases LDL cholesterol and decreases HDL cholesterol levels. Kraft capitalizes on a common misperception of dietary cholesterol to mislead consumers who are specifically concerned about heart health into purchasing a product that increases their LDL serum cholesterol, lowers their HDL serum cholesterol, and raises their risk for heart disease, diabetes, and cancer.

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

**Ritz Crackers Hint of Salt**



COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

63.   **Misleading "No Cholesterol" Claims:** The side panels of the Ritz Crackers Hint of Salt packaging state "No Cholesterol."

64.   As described in detail above, the risk of cardiovascular disease is not related to the consumption of dietary cholesterol, but to the serum levels of LDL cholesterol relative to HDL cholesterol. Kraft's Ritz Crackers Hint of Salt contain dangerous levels of *trans* fat, which increases LDL cholesterol and decreases HDL cholesterol levels. Kraft capitalizes on a common misperception of dietary cholesterol to mislead consumers who are specifically concerned about heart health into purchasing a product that increases their LDL serum cholesterol, lowers their HDL serum cholesterol, and raises their risk for heart disease, diabetes, and cancer.

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1 | **Ritz Crackers Reduced Fat**





COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1        65.    **Misleading "No Cholesterol" Claims:** The front and side panels of

2   the Ritz Crackers Reduced Fat packaging state "No Cholesterol."

3        66.    As described in detail above, the risk of cardiovascular disease is not

4   related to the consumption of dietary cholesterol, but to the serum levels of LDL

5   cholesterol relative to HDL cholesterol. Kraft's Ritz Crackers Reduced Fat

6   contain dangerous levels of *trans* fat, which increases LDL cholesterol and

7   decreases HDL cholesterol levels. Kraft capitalizes on a common misperception

8   of dietary cholesterol to mislead consumers who are specifically concerned about

9   heart health into purchasing a product that increases their LDL serum cholesterol,

10   lowers their HDL serum cholesterol and raises their risk for heart disease,

11   diabetes, and cancer.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1  **Ritz Crackers Whole Wheat**



COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21





22    67.    **Misleading Packaging:** The side panel of the Ritz Crackers Whole

23  Wheat package states "Ritz Whole Wheat Crackers provides 5g whole grain,"

24  "Nutritionists Recommend," and "STEPS TO A HEALTHIER YOU." These

25  claims are misleading, as the obvious implication is that Ritz Whole Wheat

26  Crackers are healthy when in fact they contain artificial *trans* fat, a toxic additive

27  that causes heart disease, cancer, and type-2 diabetes.

28

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

68.   **Misleading "No Cholesterol" Claims:** Ritz Crackers Whole Wheat state "No Cholesterol" on the front and side labels of the packaging.

69.   As described in detail above, the risk of cardiovascular disease is not related to the consumption of dietary cholesterol, but to the serum levels of LDL cholesterol relative to HDL cholesterol. Kraft's Ritz Crackers Whole Wheat contain dangerous levels of *trans* fat, an additive which increases LDL cholesterol and decreases HDL cholesterol levels. Kraft capitalizes on a common misperception of dietary cholesterol to mislead consumers who are specifically concerned about heart health into purchasing a product that raises their LDL serum cholesterol, lowers their HDL serum cholesterol and raises their risk for heart disease, cancer, and diabetes.

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

**Original Premium Saltine Crackers**



70.    **Misleading "Sensible Snacking" Claims:** Kraft labels its Original Premium Saltine Crackers "Sensible Snacking." Original Premium Saltine Crackers, however, contain artificial *trans* fat which, far from "sensible snacking," will cause heart disease, cancer, and diabetes in many of the people that consume them.

71.    **Misleading "No Cholesterol" Claims:** Kraft labels its Original Premium Saltine Crackers "No Cholesterol."

72.    As described in detail above, the risk of cardiovascular disease is not related to the consumption of dietary cholesterol, but to the serum levels of LDL cholesterol relative to HDL cholesterol. Kraft's Original Premium Saltine Crackers contain dangerous levels of *trans* fat, which increases LDL cholesterol and decreases HDL cholesterol levels. Kraft capitalizes on a common misperception of dietary cholesterol to mislead consumers who are specifically concerned about heart health into purchasing a product that increases their LDL serum cholesterol, lowers their HDL serum cholesterol and raises their risk for heart disease, diabetes, and cancer.

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1  **Honey Maid Grahams**

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1  **Honey Maid Grahams, Low Fat Honey**



COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

73.   **Misleading Packaging:** Kraft misleads consumers into believing that Honey Maid Grahams are healthy by making deceptive claims on the product packaging. Such statements include "Contains 5 Grams Whole Grain! per serving" "Sensible Solution" and "No Cholesterol." These statements are deceptive in intent and nature: they imply that Honey Maid Grahams are healthy despite the fact that they contain artificial *trans* fat, a toxic additive that causes heart disease, cancer, and type-2 diabetes.

74.   As described in detail above, the risk of cardiovascular disease is not related to the consumption of dietary cholesterol, but to the serum levels of LDL cholesterol relative to HDL cholesterol. Kraft's Honey Maid Grahams contain dangerous levels of *trans* fat, which increases LDL cholesterol and decreases HDL cholesterol levels. Kraft capitalizes on a common misperception of dietary cholesterol to mislead consumers who are specifically concerned about heart health into purchasing a product that increases their LDL serum cholesterol, lowers their HDL serum cholesterol and raises their risk for heart disease, diabetes, and cancer.

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

**Nabisco Ginger Snaps**



75.     **Misleading "Sensible Solutions" Claims:** Kraft labels its Ginger Snaps containing artificial *trans* fat with a label that prominently states "Sensible Solutions." Labeling the package in this way implies that it is "sensible" to consume the product contained within. Ginger Snaps, however, contain artificial *trans* fat which, far from a "sensible solution," will cause heart disease, cancer, and diabetes in many of the individuals who consume them.

76.     **Misleading "No Cholesterol" Claims:** Kraft labels its Ginger Snaps "No Cholesterol."

77.     As described in detail above, the risk of cardiovascular disease is not related to the consumption of dietary cholesterol, but to the serum levels of LDL cholesterol relative to HDL cholesterol. Kraft's Ginger Snaps contain dangerous levels of *trans* fat, which increases LDL cholesterol and decreases HDL

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1  cholesterol levels. Kraft capitalizes on a common misperception of dietary

2  cholesterol to mislead consumers specifically concerned about heart health into

3  purchasing a product that increases their LDL serum cholesterol, lowers there HDL

4  serum cholesterol and raises their risk for heart disease, diabetes, and cancer.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE
ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

## CLASS ACTION ALLEGATIONS

78.  Plaintiffs bring this action on behalf of themselves and all others similarly situated (the "Class") in accordance with Rule 23 of the Federal Rules of Civil Procedure.

79.  The Class is defined as:

All persons (excluding officers, directors, and employees of Kraft) who purchased, on or after January 1, 2000, one or more Kraft Products in the United States containing artificial *trans* fat for their own use rather than resale or distribution.

80.  Questions of law and fact common to Plaintiffs and the Class include:

   a.  Whether Kraft contributed to, committed, and/or is responsible for the conduct alleged herein;

   b.  Whether Kraft's conduct constitutes the violations of law alleged herein;

   c.  Whether Kraft acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein; and

   d.  Whether Class members are entitled to compensatory, injunctive, and other equitable relief.

81.  By purchasing and/or using the Kraft Products, all Class members were subjected to the same wrongful conduct.

82.  Absent these material deceptions, misstatements, and omissions, Plaintiffs and other Class members would not have purchased the Kraft Products.

83.  Plaintiffs' claims are typical of the Class's claims. Plaintiffs will fairly and adequately protect the interests of the Class, have no interests that are incompatible with the interests of the Class, and have retained counsel competent and experienced in class litigation.

84.  The Class is sufficiently numerous, as it includes hundreds of thousands of individuals who purchased the Kraft Products throughout the United States.

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1    85.    Class representation is superior to other options for the resolution of
2    the controversy. The relief sought for each Class member is small. Absent the
3    availability of class action procedures, it would be infeasible for Class members to
4    redress the wrongs done to them.

5    86.    Kraft has acted on grounds applicable to the Class, thereby making
6    appropriate final injunctive relief or declaratory relief concerning the Class as a
7    whole.

8    87.    Questions of law and fact common to the Class predominate over any
9    questions affecting only individual members.

10    **Kraft fraudulently concealed the health hazards of consuming its products.**

11    88.    Kraft has tolled any applicable statute of limitations by affirmatively
12    concealing and publically misrepresenting its violations of law as described herein.
13    A reasonable consumer would have relied on the deceptive and false claims made
14    on the packaging of the Kraft Products, and through the exercise of reasonable
15    diligence would not have discovered the violations alleged herein because Kraft
16    actively and purposefully concealed the truth regarding its products.

17    **FIRST CAUSE OF ACTION**

18    **False Advertising under the Lanham Act, 15 U.S.C. § 1125 *et seq.***

19    89.    Plaintiffs reallege and incorporate the allegations elsewhere in the
20    Complaint as if set forth in full herein.

21    90.    Kraft has made and distributed, in interstate commerce and in this
22    District, products that make false or misleading statements of fact regarding their
23    content. All of the products described herein were placed into interstate commerce
24    by Kraft and sold throughout the country and this District.

25    91.    The Kraft Products contain on their labels actual misstatements and/or
26    misleading statements and failures to disclose, including, among others, the
27    statement that such products contain "No Cholesterol."

28

40

92.     These false and/or misleading statements and omissions actually deceive, or have a tendency to deceive, any reasonable consumer. This deception is material in that it is likely to influence the purchasing decision of a reasonable consumer.

93.     Plaintiffs seek an order directing Kraft to destroy all misleading and deceptive advertising materials and products in accordance with 15 U.S.C. § 1118.

94.     Plaintiffs further seek an injunction under 15 U.S.C. § 1116 restraining Kraft, its agents, employees, representatives, and all persons acting in concert with Kraft from engaging in further acts of false advertising, and ordering removal of all of Kraft's false advertisements and products possessing misleading statements or omissions of fact.

## SECOND CAUSE OF ACTION

### Violations of the California Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.*

95.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

96.     Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

97.     The acts, omissions, misrepresentations, practices, and non-disclosures of Kraft as alleged herein constitute "unlawful" business acts and practices in that Kraft's conduct violates the Lanham Act, the False Advertising Law and the Consumer Legal Remedies Act.

98.     The acts, omissions, misrepresentations, practices, and non-disclosures of Kraft as alleged herein constitute "unfair" business acts and practices in that Kraft's conduct is immoral, unscrupulous, and offends public policy. Further, the gravity of Kraft's conduct outweighs any conceivable benefit of such conduct.

99.     The acts, omissions, misrepresentations, practices, and non-

41

1   disclosures of Kraft as alleged herein constitute "fraudulent" business acts and
2   practices in that Kraft's conduct has a tendency to deceive both the Class members
3   and the general public.

4       100.   In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an
5   order enjoining Kraft from continuing to conduct business through unlawful,
6   unfair, and/or fraudulent acts and practices and to commence a corrective
7   advertising campaign.

8       101.   Plaintiffs further seek an order for the disgorgement and restitution of
9   all monies from the sale of the Kraft Products, which were acquired through acts of
10  unlawful, unfair, and/or fraudulent competition.

11                          **THIRD CAUSE OF ACTION**
12            **Violations of the California False Advertising Law,**
13             **Bus. & Prof. Code § 17500 *et seq.***

14      102.   Plaintiffs reallege and incorporate the allegations elsewhere in the
15  Complaint as if set forth in full herein.

16      103.   In violation of Bus. & Prof. Code § 17500 *et seq.*, the advertisements,
17  labeling, policies, acts, and practices described herein were designed to, and did,
18  result in the purchase and use of the products without the knowledge that the Kraft
19  Products contained toxic artificial *trans* fat.

20      104.   Kraft either knew or reasonably should have known that the labels on
21  the Kraft Products were untrue and/or misleading.

22      105.   As a result, Plaintiffs, the Class, and the general public are entitled to
23  injunctive and equitable relief, restitution, and an order for the disgorgement of the
24  funds by which Kraft was unjustly enriched.

25
26
27                          **FOURTH CAUSE OF ACTION**
28
                                    42

## Violations of the Consumer Legal Remedies Act,
### Civ. Code § 1750 *et seq.*

106. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

107. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

108. Kraft's policies, acts, and practices were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

    a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

    b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

    c. § 1770(a)(9): advertising goods with intent not to sell them as advertised.

    d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

109. As a result, Plaintiffs and the Class have suffered irreparable harm and are entitled to injunctive relief and restitution.

110. In compliance with Civ. Code § 1782, Plaintiffs have sent written notice to Kraft of their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves. all others similarly situated, and the general public, pray for judgment and relief against Defendants as follows:

A. Declaring this action to be a proper class action.

43

B.     An order enjoining Kraft from

    a.     marketing the Kraft Products as "no cholesterol" and/or "cholesterol free" when they contain artificial *trans* fat, which raises serum cholesterol.

    b.     marketing the Kraft Products using the word "sensible" when they contain artificial *trans* fat.

    c.     marketing the Kraft Products using the word "wholesome" when they contain artificial *trans* fat.

C.     An order compelling Kraft to conduct a corrective advertising campaign to inform the public that its products contain unsafe amounts of *trans* fat at consumers' actual consumption levels.

D.     An order requiring Kraft to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice.

E.     An order compelling Kraft to destroy all misleading and deceptive advertising materials and products as provided by 15 U.S.C. § 1118.

F.     An order requiring Kraft to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the CLRA, plus pre-and post-judgment interest thereon;

G.     Costs, expenses, and reasonable attorneys' fees;

H.     Any other and further relief the Court deems necessary, just, or proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED: February 10, 2010             Respectfully Submitted,

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1
2
3

*Gregory Weston*

Gregory S. Weston

4
5   THE WESTON FIRM
6   Gregory S. Weston
    Jack Fitzgerald
7   888 Turquoise Street
    San Diego, CA 92109
8   Telephone:   858 488 1672
9   Facsimile:    480 247 4553

10  BECK & LEE BUSINESS TRIAL
    LAWYERS
11  Jared H. Beck
12  Elizabeth Lee Beck
    28 West Flagler Street, Suite 555
13  Miami, FL 33130
14  Telephone:  305 789 0072
    Facsimile:   786 664 3334
15
16  Counsel for Plaintiffs
17
18
19
20
21
22
23
24
25
26
27
28

45

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV10- 1028 GW (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

*Failure to file at the proper location will result in your documents being returned to you.*

---

Name & Address:
Kraft Foods Global, Inc.
C T Corporation System
818 West Seventh Street
Los Angeles, CA 90017

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

EVANGELINE RED and RACHEL WHITT, on
Behalf of Themselves and All Others Similarly
Situated,

PLAINTIFF(S)

v.

KRAFT FOODS INC, KRAFT FOODS NORTH
AMERICA, and KRAFT FOODS GLOBAL, INC.,

DEFENDANT(S).

CASE NUMBER

**CV10-01028 GW(AGRX)**

**SUMMONS**

TO:   DEFENDANT(S): Kraft Foods Inc., Kraft Foods North America, and Kraft Foods Global, Inc.

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Gregory S. Weston _____, whose address is The Weston Firm, 888 Turquoise Street, San Diego, CA 92109 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

FEB 1 1 2010

Dated: _____

Clerk, U.S. District Court

By: _____

NANCY CASTRO

Deputy Clerk

*(Seal of the Court)*     1144

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
EVANGELINE RED and RACHEL WHITT, on Behalf of Themselves and All Others Similarly Situated,

**DEFENDANTS**
KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
The Weston Firm, Gregory S. Weston, 888 Turquoise Street, San Diego, CA 92109, (858) 488-1672;  Beck and Lee Business Trial Lawyers, Jared H. Beck, 28 West Flagler Street Suite 555, Miami, Fl. 33130, (305) 789-0072

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes  ☐ No    ☒ **MONEY DEMANDED IN COMPLAINT: $** to be determined at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)
False Advertising under the Lanham Act, 15 U.S.C. § 1125

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☒ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV10-01028 GW(AGRX)**

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑Yes
If yes, list case number(s): CV10-00927 MMM (AJWx)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date 2-10-10

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |