# EXHIBIT D

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 10-1028-GW(AGRx) | Date | June 24, 2010 |
| Title | *Evangeline Red, et al. v. Kraft Foods, Inc., et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Elizabeth L. Beck
Jared H. Beck
Gregory S. Weston
John J. Fitzgerald, IV

Attorneys Present for Defendants:

Dean N. Panos

**PROCEEDINGS:** **DEFENDANT KRAFT FOODS GLOBAL, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULES (9)(B) AND 12(B)(6) (filed 05/26/10)**

Hearing is held. The Court's tentative ruling is circulated and attached hereto.

The Court sets the following:

| | |
|---|---|
| Deadline for defendants to file Motion to Strike | July 8, 2010 |
| Plaintiff's opposition | July 16, 2010 |
| Defendant's reply | July 21, 2010 |
| Hearing on Motion to Strike | **July 26, 2010 at 8:30 a.m.** |

Defendant Kraft Foods Global, Inc.'s Motion to Dismiss First Amended Complaint Pursuant to Rules (9)(b) and 12(b)(6) is **taken under submission.**

| | : | 40 |
|---|---|---|
| Initials of Preparer | JG | |

***Red v. Kraft Foods, Inc.***, Case No. CV-10-1028
Tentative Ruling on Motion to Dismiss the FAC

Defendants Kraft Goods, Inc., Kraft Foods North America, and Kraft Foods Global, Inc. (collectively, "Kraft" or "Defendants") move to Dismiss the First Amended Complaint of Plaintiffs Evangeline Red and Rachel Whitt ("Plaintiffs") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendants' motion to dismiss will be GRANTED IN PART AND DENIED IN PART.

**Background**

Plaintiffs filed this putative class action lawsuit on February 11, 2010. In their First Amended Complaint ("FAC"), filed May 17, 2010, Plaintiffs plead four claims for relief for violation of: (1) the Lanham Act, 15 U.S.C. § 1125 et seq., (2) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., (3) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq., and (4) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq. Each of these claims for relief arises from Plaintiffs' allegations that the labeling of certain Kraft foods products is deceptive and misleading. For example, paragraph 5 of the FAC avers that "Kraft falsely markets Ritz Crackers, Original Premium Saltine Crackers, Ginger Snaps, and Teddy Grahams (the 'Kraft Trans Fat Products') as healthful despite that they contain dangerous levels of artificial *trans* fat, a toxic food additive banned in many parts of the world."

Plaintiffs allege that, on or after January 1, 2000, they each repeatedly purchased for their own use Kraft packaged food products containing artificial trans fat.[1] FAC ¶¶ 14, 89. A large portion of the FAC is taken up with a documentation of scientific research regarding the adverse health consequences to humans of ingesting artificial trans fat, including an increased risk of cardiovascular disease, type 2 diabetes, and cancer. See id. at ¶¶ 17- 51. Despite these known adverse health consequences, Plaintiffs allege that Kraft employs various methods to suggest to consumers that its products containing artificial trans fat are healthy. These include making the following statements in connection with various products:

- "No Cholesterol" (various products), FAC ¶¶ 58, 59, 67, 70, 73, 77, 81, 83, 86;
- "A fun, wholesome choice for your family" (Teddy Grahams), id. at ¶ 50;
- "A good source of Calcium, Iron & Zinc to Help Support Kids' Growth and Development" (Teddy Grahams), id. at ¶ 61;
- "Smart Choices Program" (Teddy Grahams), id. at ¶ 62;
- "Made With Real Vegetables" (Vegetable Thins and Ritz Crackers

_____

[1]All of the products at issue in this case disclose on their packaging that they contain "0g trans fat" per serving. U.S. Food and Drug Administration regulations provide that if the designated food serving contains less than .5 grams of trans fat, "the content, when declared, shall be expressed as zero." See 21 C.F.R. § 101.9(c)(2)(ii). Plaintiffs do not contend that Defendants' products contain trans fat in a greater amount than .5 grams per serving.

Roasted Vegetable), id. at ¶¶ 64, 66
- "Provides 5g whole grain" and "Contains 6 Grams Whole Grain per
serving" (Ritz Crackers Whole Wheat and Honey Maid Low Fat
Grahams), id. at ¶¶ 76, 83;
- "STEPS TO A HEALTHIER YOU" and "Nutritionists Recommend" (Ritz
Crackers Whole Wheat), id. at ¶ 76.
- "Sensible Snacking" and "Sensible Solution" (Ritz Crackers Hint of
Salt, Ritz Crackers Reduced Fat, Ritz Crackers Whole Wheat, Original
Premium Saltine Crackers, Honey Maid Grahams and Nabisco Ginger
Snaps), id. at ¶¶ 72, 75, 79, 80, 83, 85.

Plaintiffs allege that they did not discover Kraft's allegedly unlawful acts until approximately
December 2009, when they became aware that the "Kraft Trans Fat Products" contained artificial
trans fat which is dangerous to human health. Id. at ¶ 15.

The FAC seeks a combination of mandatory and prohibitive injunctive relief and
restitution including: (1) an order enjoining Kraft from continuing to engage in its alleged
deceptive advertising practices; (2) an order compelling Kraft to conduct a corrective advertising
campaign; (3) restitution of all monies, revenues, and profits obtained by means of any wrongful
act or practice; and (4) an order compelling Kraft to destroy all misleading and deceptive
advertising materials.

**Legal Standards**

Plaintiffs in federal court are required to give only "a short and plain statement of the
claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Fed. R. Civ.
P. 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be
granted. A complaint may be dismissed for failure to state a claim upon which relief can be
granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under
a cognizable legal theory. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also
Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal is
appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support
a cognizable legal theory."). A motion to dismiss should be granted if the complaint does not
proffer enough facts to state a claim for relief that is plausible on its face. See Twombly, 550
U.S. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the
mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the
pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

In deciding a 12(b)(6) motion, the court is limited to the allegations on the face of the
complaint (including documents attached thereto), matters which are properly subject to judicial
notice, and other extrinsic documents when "the plaintiff's claim depends on the contents of a
document, the defendant attaches the document to its motion to dismiss, and the parties do not
dispute the authenticity of the document, even though the plaintiff does not explicitly allege the
contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir.
2005). The court must construe the complaint in the light most favorable to the plaintiff and must
must accept all properly delineated factual allegations as true. Cahill v. Liberty Mutual Ins. Co.,
80 F.3d 336, 337-38 (9th Cir. 1996). The court must also accept as true all reasonable inferences

to be drawn from the material allegations in the complaint. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). Conclusory statements, unlike proper factual allegations, are not entitled to a presumption of truth. See Iqbal, 129 S. Ct. at 1951; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

**Analysis**

Federal Preemption

Defendants first argue Plaintiffs' claims pertaining to all of the allegedly misleading statements on the labeling of Defendants' products are preempted under the express preemption provision of the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343-1(a). This argument is well-taken insofar as it pertains to certain of Plaintiffs' claims, e.g. that Kraft's designation of "0g trans fat" on its packaging is misleading where the serving portion of the product may in fact contain less than .5 grams of trans fat. See FAC ¶16. However, the NLEA's express preemption provision would not appear to bar Plaintiffs from alleging that Kraft's general assertions about the healthfulness of its products containing artificial trans fats are deceptive and misleading to consumers.

"When addressing questions of express or implied pre-emption, we begin our analysis 'with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" Altria Group, Inc. v. Good, 129 S. Ct. 538, 543 (2008) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). "Thus, when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption." Id. (citation and internal quotes omitted).

In 1990, Congress passed the NLEA, 104 Stat. 2353, 21 U.S.C. § 343 et seq., which amended the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, et seq. ("FDCA"), by providing a preemption provision which created express preemption for state laws, including certain labeling requirements that were added in the NLEA. See Wright v. General Mills, Inc., 2009 U.S. Dist. LEXIS 90576 * 4-5 (S.D. Cal. Sept. 30, 2009); 21 U.S.C. § 343-1.[2] Section 343-1(a) expressly preempts state regulation of specific topics related to food labeling and provides that states may not establish any requirement respecting these specified topics "that is not identical" to the requirements in the FDCA in certain categories. Section 343-1(a)(4) and (5) concern, respectively, "any requirement for nutrition labeling of food that is not identical to the requirement of section 403(q) [21 USCS § 343(q)]," and "any requirement respecting any claim of the type described in section 403(r)(1) [21 U.S.C. § 343(r)(1)] made in the label or labeling of food that is not identical to the requirement of section 403(r) [21 U.S.C. § 343(r)]."

In turn, Section 403(q)(1) states, in pertinent part, that a food shall be deemed to be "misbranded" unless its label provides nutritional information detailing:

---

[2]The NLEA's rule of construction concerning the scope of preemption excludes implied preemption, providing in relevant part that, "[t]he [NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the [FDCA]." Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364; see also In re Pepsico, Inc., 588 F. Supp. 2d 527, 532-33 (S.D. N.Y. 2008).

(A)(i) the serving size which is an amount customarily consumed and which is expressed in a common household measure that is appropriate to the food, or

(ii) if the use of the food is not typically expressed in a serving size, the common household unit of measure that expresses the serving size of the food,

(B) the number of servings or other units of measure per container,

(C) the total number of calories--

(i) derived from any source, and

(ii) derived from the total fat,

in each serving size or other unit of measure of the food,

(D) the amount of the following nutrients: Total fat, saturated fat, cholesterol, sodium, total carbohydrates, complex carbohydrates, sugars, dietary fiber, and total protein contained in each serving size or other unit of measure.

Section 403(r), in pertinent part, provides that claims -

(iii) may not be made with respect to the level of cholesterol in the food if the food contains, as determined by the Secretary by regulation, fat or saturated fat in an amount which increases to persons in the general population the risk of disease or a health related condition which is diet related unless [certain conditions are met].

*          *          *          *

(v) may not state that a food is high in dietary fiber unless the food is low in total fat as defined by the Secretary or the label or labeling discloses the level of total fat in the food in immediate proximity to such statement and with appropriate prominence which shall be no less than one-half the size of the claim with respect to the level of dietary fiber, and

(vi) may not be made if the Secretary by regulation prohibits the claim because the claim is misleading in light of the level of another nutrient in the food.

FDA regulations state:

A statement of the number of grams of trans fat in a serving . . . is not required for products that contain less than 0.5 gram of total fat in a serving if no claims are made about fat, fatty acid or cholesterol content . . . . Trans fat content shall be indented and expressed as grams per serving to the nearest 0.5 (1/2)-gram increment below 5 grams and to the nearest gram increment above 5 grams.  If the serving contains less than 0.5 gram, the content, when declared, shall be expressed as zero.

21 CFR 101.9(c)(2)(ii).

Directed, as it ostensibly is, to all of Plaintiffs' claims related to Defendants' labeling, Defendants' express preemption argument is overreaching. There is a colorable (and, in fact, ultimately successful) argument that claims based on <u>some</u> of the alleged misrepresentations cited in the Complaint - in particular, the claims based on the designation of "0g trans fat," "no cholesterol," and representations concerning the amounts of whole grain in Defendants' products - are preempted by the FDCA. By contrast, Defendants' assertion (that the FDA's decision not to generally prohibit food manufacturers from making claims about the nutrient content of their products precludes all lawsuits based on alleged deceptive or misleading product labeling) finds scant support in the relevant case law.

By its terms, the NLEA's preemption clause applies only to "any requirement for nutrition labeling of food," 21 U.S.C. § 243-1(a). "In the context of express preemption provisions, 'the term "requirements" . . . reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties.' <u>Bates v. Dow Agrosciences L.L.C.</u>, 544 U.S. 431, 443, 125 S. Ct. 1788, 161 L. Ed. 2d 687 (2005)." <u>In re Pepsico, Inc.</u>, 588 F. Supp. 2d at 532 (additional citations omitted). Plaintiffs, however, argue that their state law consumer fraud law claims cannot be preempted. Rather than seeking to impose a <u>requirement</u> for nutrition labeling, Plaintiffs urge, they are simply seeking to hold food product manufacturers to the same standard as all companies that sell products to the public - <u>i.e.</u>, "that they may not deceive or defraud."

Certainly with respect to Plaintiffs' claims regarding Defendants' "0g trans fat" and perhaps also with their "no cholesterol" designations - where the FDCA sets guidelines specifying when a product may or may not state that it contains 0g trans fat or no cholesterol - this argument is disingenuous at best, because the effect of an injunction in this case would be to impose a requirement that the phrases "0g trans fat" or "no cholesterol" not be used when a product contains any amount of trans fat. The same argument could be made with respect to Defendants' labeling regarding the amounts of whole grain in their products. Other phrases used by Defendants in their product labeling are not explicitly regulated by the FDCA. Thus, Plaintiffs' challenges to Defendants' alleged labeling claims about the overall healthiness/ wholesomeness of their products (<u>e.g.</u> "STEPS TO A HEALTHIER YOU," "'A fun, wholesome choice for your family," "Made With Real Vegetables," "A good source of Calcium, Iron & Zinc," etc.) would not be expressly preempted.

Plaintiffs make the somewhat tortured argument that, because "no cholesterol" claims are subject to disqualifying criteria for cholesterol, saturated fat, and total fat, but not for trans fat, claims that such statements are misleading on products containing trans fat are not subject to the NLEA's preemption provision. Plaintiffs analogize to <u>Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc.</u>, 2006 U.S. Dist. LEXIS 13683 (D. Mass. Mar. 28, 2006). In that case, however, the district court permitted a false advertising claim to go forward based on allegations that the defendant falsely marketed its water as "pure" because "no federal standards of identity for bottled water purity exist." <u>Id.</u> at * 30. Here, by contrast, there <u>is</u> a federal standard for a "no cholesterol claim" (<u>see</u> 21 CFR § 101.62(c) and (d)) and to prohibit such a claim when a product contains trans fat would be to impose a requirement that is different from the requirements of the FDCA.

Similarly, Plaintiffs' reliance on <u>Bates</u> to salvage their claims based on Defendants' representations of "no cholesterol" and "whole grain" would be ineffectual. The Supreme Court

-5-

in that case simply held that state law need not explicitly incorporate federal standards as an element of a cause of action in order to survive preemption, finding that an express preemption provision in the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) did not "pre-empt any state rules that are fully consistent with federal requirements." 544 U.S. at 452. It is true that regulations promulgated under both FIFRA and the FDA forbid labeling that "bears any statement . . . which is false or misleading in any particular." Compare 21 C.F.R. § 101.13(i)(3) with 40 C.F.R. § 156.10(a)(5)(ii). The Bates Court did not, however, suggest that such regulatory provisions somehow authorize claims under state law that, as here, would have the effect of imposing duties that are inconsistent with federal statutes.[3] The Court never reached the question of whether the state law claims in that case would have such an effect. See id. at 447 ("[W]e leave it to the Court of Appeals to decide in the first instance whether these particular common-law duties are equivalent to FIFRA's misbranding standards.").

Plaintiffs also cite two more recent Supreme Court cases, Wyeth v. Levine, 129 S. Ct. 1187 (2009), and Altria Group, Inc. v. Good, 129 S. Ct. 538 (2008), in support of their argument against federal preemption. In Wyeth, the Supreme Court, in finding that Plaintiff's tort claims were not preempted, remarked upon the absence of an express preemption provision and so it is not particularly applicable here. Altria, is more favorable to Plaintiff's position. There, the Supreme Court upheld claims under Maine's Unfair Trade Practices Act for a cigarette manufacturer's use of the allegedly deceptive statements "light" and "lowered tar and nicotine" notwithstanding a provision in the Federal Cigarette Labeling and Advertising Act stating that "[no] requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." Altria, 129 S. Ct. at 544 (quoting 15 U.S.C § 1334(b)).

There is language in Altria that could be read to suggest that Plaintiffs' "no cholesterol" and whole grain claims would not be preempted even though they appear to impose requirements that are "not identical" to those of the FDCA. Noting that the presence of an express preemption provision "does not immediately end the inquiry," id. at 543, the Supreme Court wrote:

> We have construed the operative phrases of [the pre-
> emption clause of the Cigarette Labeling and Advertising Act]§

---

[3] The Supreme Court did, in the context of a claim for breach of express warranty, reject an "inducement test" for preemption, writing:

> This effects-based test finds no support in the text of § 136v(b), which speaks only of "requirements." A requirement is a rule of law that must be obeyed; an event, such as a jury verdict, that merely motivates an optional decision is not a requirement. The proper inquiry calls for an examination of the elements of the common-law duty at issue, see Cipollone, 505 U.S., at 524, 120 L. Ed. 2d 407, 112 S. Ct. 2608 (plurality opinion); it does not call for speculation as to whether a jury verdict will prompt the manufacturer to take any particular action (a question, in any event, that will depend on a variety of cost/benefit calculations best left to the manufacturer's accountants).

544 U.S. at 445.

1334(b) in two prior cases: <u>Cipollone</u>, 505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407, and <u>Reilly</u>, 533 U.S. 525, 121 S. Ct. 2404, 150 L. Ed. 2d 532.  On both occasions we recognized that the phrase a "based on smoking and health" modifies the state-law rule at issue rather than a particular application of that rule.

    In <u>Cipollone</u>, the plurality. . . read the pre-emption provision . . . to pre-empt common-law rules as well as positive enactments. . . . [T]he plurality concluded that the provision does not preclude all common-law claims that have some relationship to smoking and health. 505 U.S., at 521-523, 112 S. Ct. 2608, 120 L. Ed. 2d 407.  To determine whether a particular common-law claim is pre-empted, the plurality inquired "whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health . . . with respect to . . . advertising or promotion,' giving that clause a fair but narrow reading." <u>Id.</u>, at 524, 112 S. Ct. 2608, 120 L. Ed. 2d 407.

    Applying this standard, the plurality held that the plaintiff's claim that cigarette manufacturers had fraudulently misrepresented and concealed a material fact was not pre-empted.  That claim alleged a violation of the manufacturers' duty not to deceive--a duty that is not "based on" smoking and health. <u>Id.</u>, at 528-529, 112 S. Ct. 2608, 120 L. Ed. 2d 407.  Respondents in this case also allege a violation of the duty not to deceive as that duty is codified in the MUTPA.  The duty codified in that state statute, like the duty imposed by the state common-law rule at issue in <u>Cipollone</u>, has nothing to do with smoking and health.

129 S. Ct. at 545.  Here, as in <u>Altria</u>, the consumer protection statutes at issue impose a different duty than the labeling requirements of the FDCA.  Critically, however, the NLEA preemption clause does not contain limiting language that is exactly analogous to the "based on smoking and health" language in section 1334(b).  Moreover, the <u>Altria</u> Court noted that "the FTC has in fact never required that cigarette manufacturers disclose tar and nicotine yields, nor has it condoned representations of those yields through the use of 'light' or 'low tar' descriptors. <u>Id.</u> at 550.  Arguably the opposite is true with respect to the"0g trans fat," "no cholesterol" and "whole grain" descriptors in this case.  Thus, <u>Altria</u> does not compel the conclusion that Plaintiffs claim in connection with these descriptors which are not covered by the NLEA's express preemption clause.

    For the foregoing reasons, the Court would find that claims against certain of Defendants' labeling provisions such as "0g trans fat," "no cholesterol" and "whole grain" are not actionable because they are preempted by federal law.  Plaintiffs' claims relating to Defendants' more general assertions regarding the healthfulness of their products do not appear to be preempted.  As it does not dispose of any of Plaintiffs' claims in their entirety, portions of Defendants' motion to dismiss should more appropriately be treated as a motion to strike.  However,

Defendants should be allowed to designate which portions of the FAC should be so striken.

<u>Primary Jurisdiction</u>

In addition to federal preemption, Defendants raise a secondary argument that Plaintiffs' claims should be dismissed under the primary jurisdiction doctrine. "The primary jurisdiction doctrine is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." <u>North County Communs. Corp. v. Cal. Catalog & Tech.</u>, 594 F.3d 1149, 1155-56 (9th Cir. 2010) (quoting <u>W. Radio Servs. Co. v. Qwest Corp.</u>, 530 F.3d 1186, 1200 (9th Cir. 2008)). "When a district court determines that primary jurisdiction applies, it enables a 'referral' of the issue to the relevant agency," meaning in practice "that the court either stays proceedings or dismisses the case without prejudice, so that the parties may seek an administrative ruling." <u>Clark v. Time Warner Cable</u>, 523 F.3d 1110, 1115 (9th Cir. 2008) (citations and internal quote omitted). The doctrine has been applied when there exists -

> (1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.

<u>Id.</u> "[T]he doctrine is not designed 'to secure expert advice' from agencies "every time a court is presented with an issue conceivably within the agency's ambit." [Citation]. Instead, it is to be used only if a claim "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency," [citation], and if "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme," [citation]." <u>Id.</u>

Here, Defendants have not identified any issue to be resolved in this case that requires the expertise of the FDA. In their Reply, Defendants do not address any of Plaintiffs' arguments against abstention, but, rather, appear to all but abandon their primary jurisdiction argument. (They simply repeat the argument from their moving papers that because "trans fat is a specific area under consideration by the FDA," the Court should abstain). None of the cases cited by Defendants suggest that abstention would be appropriate in this case, and <u>In re Paxil Litig.</u>, 218 F.R.D. 242, 248 (C.D. Cal. 2003) - in which the district court, denying class certification, opined that "Plaintiffs would use the Court as a forum to challenge and to second-guess the FDA's prior approval of Paxil's safety and efficacy" - is wildly inapposite. As the district court observed in <u>Lockwood v. ConAgra Foods, Inc.</u>, 597 F.Supp.2d 1028 (N.D, Cal. 2009), the question of deceptive food labeling "is not a technical area in which the FDA has greater technical expertise than the courts." <u>Id.</u> at 1035; <u>see also</u> <u>Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.</u>, 642 F. Supp. 2d 1112, 1123 (C.D. Cal. 2009).

<u>Whether Plaintiffs' Remaining Claims Are Non-Deceptive and/or Constitute Mere Puffery</u>

Reasonable reliance is not an element of claims under the UCL, FAL, and CLRA. <u>In re Tobacco II Cases</u>, 46 Cal.4th 298, 312 (2009). "Rather, claims under these California statutes are

Case3:11-cv-02763-JSW  Document18-5  Filed08/19/11  Page11 of 33
Case 2:10-cv-01028-GW -AGR  Document 36  Filed 06/24/10  Page 10 of 14  Page ID
#:649

governed by the "reasonable consumer" test." <u>Williams v. Gerber Prods. Co.</u>, 552 F.3d 934, 938 (9th Cir. 2008). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." <u>Brockey v. Moore</u>, 107 Cal. App. 4th 86, 100 (2003); <u>see also</u> <u>Sugawara v. Pepsico, Inc.</u>, 2009 U.S. Dist. LEXIS 43127 (E.D. Cal. 2009). Where, however, an "alleged misrepresentation, in context, is such that no reasonable consumer could be misled," or where such an alleged misrepresentation amounts to "mere puffery," then the allegation may be dismissed as a matter of law. <u>Haskell v. Time, Inc.</u>, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).

Defendants assert that no reasonable consumer could be misled as to any of the challenged statements on their product packaging. However, this argument fails to dispose of Plaintiffs' remaining allegations, as the Court cannot say at this stage that none of the challenged statements are not deceptive as a matter of law.

First, Defendants assert that Plaintiffs cannot state a claim for relief with respect to Defendants' claims that their products are "made with real vegetables," because it is literally true that their products are made with real vegetables. Plaintiffs, however, allege that depictions of vegetables and the phrase "Made with Real Vegetables" on Defendants' product packaging are misleading because each product "contains more [trans fat] than all of the pictured vegetables combined." FAC ¶¶ 64, 66. Defendants correctly observe that the FAC indulges in hyperbole. ("[T]he large images of several particularly healthful vegetables conveys the concrete message to a reasonable consumer: "You can trust eating this product is not bad for your health. We use a lot of vegetables in it." <u>Id.</u> at ¶ 65. ). However, Defendants' implicit argument - that consumers assessing the significance of pictures of vegetables and other depictions of healthfulness should be expected to rely on the federally mandated ingredient list on the product boxes - is undermined (if not negated) by the following language from the Ninth Circuit's opinion in <u>Williams</u>:

> We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.

552 F.3d at 939.

It is noted that the juxtaposition between the actual ingredients and the representation of fruits in the <u>Gerber</u> case is arguably somewhat more dramatic than it is here. Nevertheless, Plaintiffs' allegations relating to Defendants' "real vegetable" claims probably should survive this motion to dismiss.

Defendants next challenge Plaintiffs' claims relating to their "Nutritionists Recommend" and "STEPS TO A HEALTHIER YOU" labeling. These statements appear in the context of the side panel of Kraft's Ritz whole wheat crackers packaging depicting an image of a pyramid over the words "MyPyramid.gov STEPS TO A HEALTHIER YOU," followed by the following

paragraph:

> Nutritionists Recommend eating at least three one-ounce
> equivalents of whole grain products per day (about 16g whole
> grains per serving, or at least 48g per day). One serving of Ritz
> Whole Wheat crackers provides 5g of whole grain, approximately
> 10% of the minimum daily amount nutritionists recommend. Log
> on to MyPyramid.gov to help you make smart food choices and get
> the most nutrition out of your calories.

See FAC p. 35. In this context, the challenged packaging statements are not likely to be
determined to be deceptive. Whether the Court can conclude at this juncture that the packaging
makes it "impossible for [Plaintiffs] to prove that a reasonable consumer was likely to be
deceived," Williams, 552 F.3d at 939, is a closer question (and arguably one that the Court,
having determined that at least some of Plaintiffs' allegations give rise to a colorable claim, need
not resolve at this juncture).

Defendants' third challenge is to Plaintiffs' claims based on Defendants' "Sensible
Solutions," "Sensible Snacking," and "Smart Choices" labeling. In attempting to distinguish
Yumul v. Smart Balance, No. 10-cv-00927 (C.D. Cal. May 21, 2010), a recent decision by a
court within this district, Defendants urge that "Kraft Foods never described its products as
healthy." Reply 15:26-16:1. Whether Defendants' labeling creates such a perception is,
manifestly, a jury question. Kraft's attempt to demonstrate that its "Sensible Solutions,"
"Sensible Snacking," and "Smart Choices" labels cannot provide the basis for a colorable claim
is unpersuasive.[4]

Finally, Defendants argue that Plaintiffs' claims that their Teddy Grahams products are a
"good source of Calcium, Iron & Zinc to Help Support Kids' Growth and Development" are not
deceptive. The requirements for making a "good source" claim are set forth at 21 C.F.R. §
101.54(c)(1). Plaintiffs' FAC does not allege that Teddy Grahams fail to meet these statutory
requirements. Plaintiffs nevertheless argue that "[a]lthough some minerals in Teddy Grahams
might benefit children, a reasonable consumer can easily obtain the minerals from healthier

---

[4] Although it is getting somewhat far afield of proper analysis on a motion to dismiss, it should
be noted that the "Smart Choices" labeling is apt to give rise to some interesting problems down the line
in this case. The "Smart Choices" program appears to be an industry-created program; Plaintiffs' claims
relating to it are therefore tantamount to an allegation that the entire program is one of consumer fraud.
In their motion to dismiss, Defendants note that the Teddy Graham package bearing the "Smart Choices
Program" representation directs consumers to the website "SmartChoicesProgram.com" which provides
consumers with the nutrient criteria for products bearing the "Smart Choices" label. The fact that
Defendants' products might meet these criteria so that the "Smart Choices" statement is literally true
does not necessarily protect it from claims of consumer fraud. See, e.g., Morgan v. AT&T Wireless
Services, Inc., 177 Cal. App. 4th 1235, 1255 (2009) ("A perfectly true statement couched in such a
manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant
information, is actionable under the UCL."); Franklin Fueling Sys. v. Veeder-Root Co., 2009 U.S. Dist.
LEXIS 72953, at *21-22 (E.D. Cal. Aug. 11, 2009) (finding that the FAL prohibits "not only advertising
which is false, but advertising which, although true, is either actually misleading or which has a capacity,
likelihood, or tendency to deceive or confuse the public").

-10-

products that do not contain trans fat." Opp. 20:15-17. It is doubtful whether a claim based
solely on allegations relating to this claim could survive a motion to dismiss under the
Twombly/Iqbal standard.

    In addition to statements that they assert are not deceptive because they are literally true,
Defendants also argue that some of their labeling statements are non-actionable puffery. "[T]he
determination of whether an alleged misrepresentation 'is a statement of fact' or is instead
'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion." Newcal
Indus. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008) (quoting Cook, Perkiss, &
Liehe v. Northern California Collection Service, Inc., 911 F.2d 242, 245 (9th Cir. 1990)).

> A statement is considered puffery if the claim is extremely unlikely
> to induce consumer reliance. Ultimately, the difference between a
> statement of fact and mere puffery rests in the specificity or
> generality of the claim. [Citation]. "The common theme that seems
> to run through cases considering puffery in a variety of contexts is
> that consumer reliance will be induced by specific rather than
> general assertions." [Citation]. Thus, a statement that is
> quantifiable, that makes a claim as to the "specific or absolute
> characteristics of a product," may be an actionable statement of
> fact while a general, subjective claim about a product is
> non-actionable puffery. [Citation].

Id.

    Plaintiffs go somewhat too far in arguing that the Ninth Circuit held, in Williams, that
certain generalized statements did not constitute puffery. Rather, the Ninth Circuit wrote:

> Gerber's claim that Snacks is "nutritious," were it standing on its
> own, could arguably constitute puffery, since nutritiousness can be
> difficult to measure concretely. [Citation]. This statement certainly
> contributes, however, to the deceptive context of the packaging as
> a whole. Given the context of this statement, we decline to give
> Gerber the benefit of the doubt by dismissing the statement as
> puffery.

Williams, 552 F.3d at 939. Here, too, Plaintiffs have successfully alleged the deceptive nature of
various examples of Defendants' product packaging when each package is "taken as a whole."
The fact that some of Defendants' labeling statements might constitute mere puffing does not
warrant dismissal of this entire action.

### Whether Plaintiffs' Claims Are Pleaded with Sufficient Particularity

    Rule 9(b) of the Federal Rules of Civil Procedure states: "In all averments of fraud or
mistake, the circumstances constituting fraud or mistake shall be stated with particularity.
Malice, intent, knowledge, and other condition of mind of a person may be averred generally."
Fed. R. Civ. P. Rule 9(b). The particularity requirement is satisfied if the circumstances
constituting the alleged fraud are described specifically enough so that defendants can
meaningfully defend against the charge. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097,
1106 (9th Cir. 2003). "'[W]hile a federal court will examine state law to determine whether the

elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement
that the <u>circumstances</u> of the fraud must be stated with particularity is a federally imposed rule.'"
<u>Id.</u> at 1103-04 (quoting <u>Hayduk v. Lanna</u>, 775 F.2d 441, 443 (1st Cir. 1985) (emphasis in
original) ).

    The Ninth Circuit has held that Rule 9(b)'s particularity requirement applies to claims
alleged under the fraud prong of the UCL and CLRA.  <u>See Kearns v. Ford Motor Co.</u>, 567 F.3d
1120, 1125 (9th Cir. 2009).  "The Ninth Circuit has not determined that Rule 9(b) applies to
Lanham Act [false advertising] claims, although some district courts have applied this standard."
<u>Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.</u>, 642 F. Supp. 2d 1112, 1123-24 (C.D.
Cal. 2009).  District courts in California tend to agree that false advertising claims are "grounded
in fraud" and are therefore subject to the requirements of Rule 9(b).  <u>See, e.g., Ecodisc Tech. AG
v. DVD Format/Logo Licensing Corp.</u>, 2010 U.S. Dist. LEXIS 55660 (C.D. Cal. Apr. 22, 2010);
<u>Pom Wonderful LLC.</u>, 642 F. Supp. 2d at 1124.

    Defendants urge that Plaintiffs' FAC fails to allege the details necessary to meet the
particularity requirements of Rule 9(b) because they merely allege that they purchased "packaged
food" products made by Kraft during the ten year period, but fail to state (1) which specific
products they purchased, (2) which particular misrepresentations they relied upon in purchasing
the products, or (3) when they viewed the products.  Moreover, Defendants note that Plaintiffs do
not allege that the current product labels were used throughout the alleged class period, so it is
unclear whether the current product labels are the ones that Plaintiffs relied on when they made
their purchases.  They further argue that Plaintiffs have not adequately alleged that they suffered
an injury.

    Except with respect to Plaintiffs' allegations of harm, Defendants' argument is well
taken.  The FAC should be amended to include allegations of which specific products Plaintiffs'
purchased, when they purchased them, and what specific allegations they relied upon in deciding
to purchase the products.

    <u>The Plausability of Plaintiffs' Allegations that the Trans Fat Content of Defendants'
Products Falsifies Representations as to their Healthfulness</u>

    Defendants final argument in favor of dismissing Plaintiffs' state law claims is that
Plaintiffs have failed to allege facts to support the conclusion that the presence of trans fat
"regardless of the amount" negates the healthful attributes of Defendants' products.  In making
this argument, Defendants rely principally upon <u>Rosen v. Unilever Us., Inc.</u>, No. C 09-02563,
2010 U.S. Dist. LEXIS 43797 (N.D. Cal May 3, 2010), where, they assert, the district court
found that "nearly identical" allegations related to other products containing trace amounts of
trans fat failed to state a claim under Rule 12(b)(6).  Obviously, this Court is not bound by the
decision in <u>Rosen</u>.  The decision in <u>Rosen</u>, moreover, centered on allegations that the defendant's
use of the word "nutritious" was false and misleading because it implied that the product
contains only nutritious oils.  <u>See id.</u> at * 13.  The district court wrote:

        The implausibility of Plaintiff's allegations can more readily be
        seen if the allegation are expressed as a categorical syllogism: "For
        the representation 'blend of nutritious oils' to be true, all
        constituent oils must be nutritious. One of the constituent oils in

the product [partially hydrogenated oil] is not nutritious. Therefore, the product representation is false."

Id. (footnote omitted) (brackets in original). Rejecting both the major and minor premise of this "categorical syllogism," the district court found that the plaintiff had not plausibly stated a claim for relief.

Here, Plaintiffs' allegations are not susceptible to such a demonstration of logical fallacy. Plaintiffs have adequately alleged facts to support their assertion that trans fat is harmful for humans to consume. Whether it is harmful in the amounts present in Defendants' products is not an appropriate question for resolution at this stage.

<u>Plaintiffs Lack of Standing to Bring a Claim under the Lanham Act</u>

Plaintiff lacks standing to bring a claim for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). "That section provides potential relief for competitors, not consumers, to protect against unfair competition." <u>Peiper v. MBNA</u>, 2007 U.S. Dist. LEXIS 13540, 1-2 (D. Haw. Feb. 27, 2007) (citing <u>Halicki v. United Artists Communications, Inc.</u>, 812 F.2d 1213, 1214 (9th Cir. 1987)).

Defendants correctly observe that the fact that Plaintiffs are only seeking injunctive relief does not confer standing upon them. Section 1116 of the Lanham Act provides an injunctive remedy to prevent either a trademark violation or a violation of section 1125. A claim under section 1125 still requires the type of anti-competitive injury that the Lanham Act is designed to redress. <u>See, e.g., Ditri v. Coldwell Banker Residential Affliates, Inc.</u>, 954 F.2d 869 (3d Cir. 1993); <u>Swartz v. Schaub</u>, 826 F. Supp. 274 (N.D. Ill. 1993). Accordingly, Plaintiffs' Lanham Act claim would be DISMISSED WITHOUT LEAVE TO AMEND.

**Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss would be GRANTED IN PART AND DENIED IN PART. Plaintiffs' claims with respect to Defendants' product statements that would impose requirements that are clearly inconsistent with the relevant federal statutes (e.g., the "no cholesterol" and "whole grain" claims) would be deemed stricken from the Complaint. Plaintiffs' case should be allowed to go forward with respect to their other claims of deceptive packaging. Plaintiffs must amend their complaint to include allegations of which specific products Plaintiffs' purchased, when they purchased them, and what specific allegations they relied upon at the time of purchase. Plaintiffs' Lanham Act claim will be DISMISSED without leave to amend.

# EXHIBIT E

1 | **THE WESTON LAW FIRM**
Gregory S. Weston (Cal. Bar No. 239944)
2 | greg@westonfirm.com
Jack Fitzgerald (Cal. Bar No. 257370)
3 | jack@westonfirm.com
88 Turquoise Street
4 | San Diego, CA 92109
Phone:      (848) 488-1672
5 | Fax:        (480) 247-4553

6 | Attorneys for Plaintiffs

7 | **JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
8 | klee@jenner.com
633 West 5th Street, Suite 3500
9 | Los Angeles, CA  90071-2054
Phone:      (213) 239-5100
10 | Facsimile:  (213) 239-5199

11 | **JENNER & BLOCK LLP**
Dean N. Panos (*pro hac vice*)
12 | dpanos@jenner.com
Stacy S. Jakobe (*pro hac vice*)
13 | sjakobe@jenner.com
Jill M. Hutchison (*pro hac vice*)
14 | jhutchison@jenner.com
353 N. Clark Street
15 | Chicago, IL 60654-3456
Phone:      (312) 222-9350
16 | Fax:        (312) 527-0484

17 |

18 | Attorneys for Defendants Kraft Foods Global, Inc., improperly sued as Kraft Foods North America, and Kraft Foods Inc.

19 |

20 | UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED and RACHEL WHITT, on Behalf of Themselves and All Others Similarly Situated, | Case No. CV10-01028 (GW) (AGRX)<br><br>Pleading Type:  Class Action |
| Plaintiffs,<br><br>vs.<br><br>KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,<br><br>Defendants. | **JOINT STIPULATION TO EXTEND CLASS CERTIFICATION BRIEFING AND OTHER CASE DEADLINES**<br><br>Judge: Hon. George H. Wu<br>Action Filed: February 11, 2010 |

1  Plaintiffs EVANGELINE RED and RACHEL WHITT and Defendants KRAFT

2  FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL,

3  INC. ("Kraft Foods") agree and stipulate to a revised schedule that would extend the

4  dates for the remaining class certification briefing and other case deadlines.

5  On April 1, 2011, the Court granted a stipulation that set the following briefing

6  schedule for class certification: Plaintiffs' Motion for Class Certification was due May

7  13; Kraft Foods' Opposition is due July 8; and Plaintiffs' Reply is due August 4. The

8  hearing on Plaintiffs' Motion for Class Certification is scheduled for August 15, 2011

9  at 8:30 a.m. (Doc. 90.)

10  Pursuant to this Court's February 2, 2011 Order (Doc. 84), the other deadlines

11  and case events currently are scheduled as follows: mediation cut-off on July 6, 2011;

12  post-mediation status conference on July 7, 2011 at 8:30 a.m.; discovery cut-off on

13  July 8, 2011; opening expert reports due on September 2, 2011; rebuttal expert reports

14  due on October 5, 2011; all discovery, including discovery motions to be heard, by

15  October 25, 2011; summary judgment opening motions due by November 22, 2011;

16  summary judgment oppositions due by December 13, 2011; summary judgment replies

17  due by December 22, 2011; hearing on summary judgment motions on January 5, 2012

18  at 8:30 a.m.; final pretrial conference on February 16, 2012 at 8:30 a.m.; and jury trial

19  beginning on February 28, 2012 at 9:00 a.m.

20  The parties have recently become aware of a need for additional time to

21  complete certain discovery related to class certification. In particular, plaintiff Rachel

22  Whitt plans to be out of the country and unavailable until the week of July 10 to be

23  deposed. Accordingly, the parties have agreed to an extension of the deadlines related

24  to class certification and together propose that the other case deadlines also be

25  modified to take into account the extended period for class certification. Extending

26  these deadlines would promote the efficient resolution of the case. It would provide

27  the parties adequate time to mediate and, in the event a class is certified, to conduct

28

Case 2:10-cv-01028-GW -AGR   Document 107   Filed 05/26/11   Page 3 of 5   Page ID #:2615

merits discovery tailored to the certified class and to evaluate the potential for agreement on disputed issues.

   Accordingly, subject to the approval of this Court, the parties have agreed and stipulated to modify the schedule as follows:

| | Current Schedule | Proposed Revised Schedule |
|---|---|---|
| Mediation Cut-off | July 6, 2011 | August 31, 2011 |
| Post-Mediation Status Conference | July 7, 2011 at 8:30 a.m. | September 1, 2011 at 8:30 a.m. |
| Defendant's Opposition to Motion for Class Certification Due | July 8, 2011 | July 28, 2011 |
| Discovery Cut-off (Class Discovery) | July 8, 2011 | July 28, 2011 |
| Plaintiffs' Reply in Support of Motion for Class Certification Due | August 4, 2011 | August 24, 2011 |
| Hearing on Plaintiffs' Motion for Class Certification | August 15, 2011 at 8:30 a.m. | September 8, 2011 at 8:30 a.m. |
| Opening Expert Reports Due | September 2, 2011 | September 30, 2011 |
| Discovery Cut-off (Merits Discovery) | | October 20, 2011 |
| Rebuttal Expert Reports Due | October 5, 2011 | November 2, 2011 |
| All Discovery, Including Discovery Motions Heard | October 25, 2011 | November 22, 2011 |
| Summary Judgment Opening Motions Due | November 22, 2011 | December 20, 2011 |

| Summary Judgment Oppositions Due | December 13, 2011 | January 10, 2012 |
|---|---|---|
| Summary Judgment Replies Due | December 22, 2011 | January 19, 2012 |
| Hearing on Summary Judgment Motions | January 5, 2012 at 8:30 a.m. | February 2, 2012 at 8:30 a.m. |
| Final Pretrial Conference | February 16, 2012 at 8:30 a.m. | March 15, 2012 at 8:30 a.m. |
| Jury Trial | February 28, 2012 at 9:00 a.m. | April 10, 2012 at 9:00 a.m. |

The parties respectfully request that the Court enter the accompanying Proposed Order.

**IT IS SO STIPULATED.**

Dated: May 26, 2011

EVANGELINE RED and RACHEL WHITT

/s/ Gregory Weston

By one of their attorneys

THE WESTON LAW FIRM
Gregory S. Weston (Cal. Bar No. 239944)
greg@westonfirm.com
Jack Fitzgerald (Cal. Bar No. 257370)
jack@westonfirm.com
888 Turquoise Street
San Diego, CA 92109
Phone: (848) 488-1672
Fax:    (480) 247-4553

KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.

/s/ Kenneth Lee

By one of their attorneys

JENNER & BLOCK LLP
Kenneth K. Lee (Cal. Bar No. 264296)
633 West 5th Street, Suite 3500
Los Angeles, CA 90071-2054
Phone:    (213) 239-5100
Fax:      (312) 239-5199

JENNER & BLOCK LLP
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
Stacy S. Jakobe (*pro hac vice*)
sjakobe@jenner.com

Jill M. Hutchison (*pro hac vice*)
jhutchison@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Phone:      (312) 222-9350
Fax:        (312) 527-0484

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT F

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 10-1028-GW (AGRx) | Date | July 25, 2011 |
| Title | Evangeline Red et al. v. Kraft Foods Inc., et al. | | |

| | | |
|---|---|---|
| Present: The Honorable | Alicia G. Rosenberg, United States Magistrate Judge | |
| Marine Pogosyan | n/a | n/a |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiff(s):          Attorneys Present for Respondent:


**Proceedings:**          **RE PLAINTIFFS' MOTIONS TO COMPEL**

On June 15, 2011, Plaintiffs Evangeline Red and Rachel Whitt filed motions to compel various discovery responses and an accompanying joint stipulation. (Dkt. No. 109-111.) This matter is appropriate for adjudication without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15.

The discovery cut-off date for class certification discovery is July 28, 2011. (Dkt. No. 108.)

Plaintiffs argue they are "entitled to discovery of additional information relevant to issues on class certification, and which comprise the common proof necessary to show the propriety of certifying the putative class." (Joint Stipulation (JS) at 2.) Defendants Kraft Foods Inc., Kraft Foods North America and Kraft Foods Global, Inc. (collectively, "Kraft Foods") argues that Plaintiffs' motion seeks to compel responses to discovery that "are not reasonably related to whether Plaintiffs have met the class certification requirements under Rule 23(a) and 23(b)." (*Id.* at 7.)

Plaintiffs describe the proposed class as "all U.S. purchases of the Kraft brands at issue, from January 1, 2000 to the present."[1] (*Id.* at 3.)

### *Legal Standard*

Whether discovery will be permitted regarding class certification "'lies within the sound discretion of the trial court.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir.

---

[1] Plaintiffs' motion for class certification clarifies that "the class definition is limited to consumers who purchased the PHVO Products for personal and household consumption." (Motion at 16, Dkt. No. 95-1.) The Kraft Foods products at issue include: Teddy Grahams Chocolatey Chip Graham Snacks, Teddy Grahams Honey Graham Snacks, Vegetable Thins Baked Snack Crackers, Ritz Crackers Roasted Vegetable, Ritz Crackers Hint of Salt, Ritz Crackers Reduced Fat, Ritz Crackers Whole Wheat, Original Premium Saltine Crackers, Honey Maid Honey Grahams, Honey Maid Low Fat Honey Grahams and Ginger Snaps. (Exh. 1 at 4 ¶ 10 to Weston Decl.)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 10-1028-GW (AGRx)                                 Date   July 25, 2011

Title   Evangeline Red et al. v. Kraft Foods Inc., et al.

---

2009) (citation omitted).

"Although in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *see Vinole*, 571 F.3d at 942 (same). "[W]here the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites . . . the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations." *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977).

"In determining whether to grant discovery the court must consider its need, the time required, and the probability of discovery resolving any factual issue necessary for the determination." *Kamm v. California City Development Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

### Time Frame For Discovery

Plaintiffs first complain that Kraft Foods asserted a general objection to discovery dating back to January 1, 2000, the start date for the proposed class. (JS at 18.) Kraft Foods agreed to provide information dating back four years prior to the filing of the complaint on February 11, 2010.

Plaintiffs make no showing that the requested time frame for discovery is at all relevant to the issue of whether class certification is appropriate. Instead, Plaintiffs argue that discovery dating back to January 1, 2000 would be "relevant to Plaintiffs' claims." (*Id.* at 19; *Id.* at 18 (contending plaintiffs are entitled to "full discovery" on "the currently-operative Complaint").) Kraft Foods responds, and Plaintiffs' papers do not dispute, that Plaintiffs' claims do not rely on packaging prior to 2006. In any event, Plaintiff's motion is denied without prejudice to renewal if a class is certified.

### Geographic Scope of Discovery

Plaintiffs complain that Kraft Foods lodged a general objection to production of its nationwide sales. (JS at 21.) Kraft Foods responds that it produced the actual advertisements and packaging that may have been seen by consumers nationwide. (*Id.* at 22.) Kraft Foods contends its nationwide sales are irrelevant to class certification.

Again, Plaintiffs make no showing that Kraft Foods' nationwide sales are at all relevant to the issue of whether class certification is appropriate. Instead, Plaintiffs argue that the information "is relevant to Plaintiffs' claims." (*Id.* at 22.) Plaintiffs' motion is denied without prejudice to renewal if a class is certified.

---

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-1028-GW (AGRx) | Date | July 25, 2011 |
|---|---|---|---|
| Title | Evangeline Red et al. v. Kraft Foods Inc., et al. | | |

*Requests for Production of Documents*

Kraft Foods agreed to produce documents responsive to Request No. 2. (*Id.* at 24.)

The parties have grouped together various categories of document requests at issue.

Request Nos. 3-4: These requests seek organization charts of employees and documents sufficient to show the identity of any suppliers, vendors or distributors who were involved in marketing, manufacturing, or developing any of the products at issue during the class period.

Plaintiffs make no showing that these requests are relevant to the issue of whether class certification is appropriate. Plaintiffs cite a case that purportedly analyzed an organization chart in determining whether to certify a class, but the case is wholly distinguishable. *Thornberry v. Delta Air Lines*, 1978 U.S. Dist. LEXIS 18601, at *15-*16 (N.D. Cal. April 3, 1978). In *Thornberry*, the proposed classes consisted of various categories of female Delta employees. *Id.* at *1. Delta's corporate structure was divided into six divisions, with each division subdivided into several departments. (*Id.*) The court looked at the organization chart to determine which divisions and departments should be included in the proposed classes. *Id.* at *14-*15 & n.5. By contrast, in this case Plaintiffs have not shown how Kraft Foods' organization charts could help identify the proposed classes of purchasers.

Request Nos. 12-13, 16, 44-54, 59: These requests generally seek communications with various third parties regarding the products at issue, the amounts of various ingredients in the products at issue, and the effects of artificial trans fat on human or animal health.

Kraft Foods agreed to produce its "advertising and marketing in California" for products identified in the Second Amended Complaint [SAC]." (JS at 29-30.) As discussed above, Kraft Foods represents that it produced the actual advertisements and packaging that may have been seen by consumers nationwide. (*Id.* at 22.)

Plaintiffs contend that these requests will provide evidence of Kraft Foods' knowledge of the "adverse effects of trans fat and other objectionable substances in its products." (*Id.* at 31.) Plaintiffs assert the requested information "will help substantiate their allegations that trans fat is extremely dangerous, that other substances in the amounts in the Kraft products are unhealthy and objectionable, and therefore that the injunctive relief Plaintiffs seek is more important than money damages." (*Id.* at 32.) In addition, to the extent formulations of the products have changed, such changes may warrant the creation of subclasses. (*Id.*)

Plaintiffs "seek to enjoin Kraft from continuing the practice of deceiving consumers with health and wellness claims concerning the Kraft PHVO Products." (Motion at 16, Dkt. No. 95-1.) Plaintiffs' motion for class certification states they will rely on expert testimony "on the health effects of the Kraft PHVO Products." (*Id.* at 19; *see* Dr. Wong Decl., Dkt. No. 99.) Thus, while Kraft Foods' documents

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 10-1028-GW (AGRx) | Date | July 25, 2011 |
| Title | Evangeline Red et al. v. Kraft Foods Inc., et al. | | |

responsive to Request No. 59 may ultimately be relevant to the merits of Plaintiffs' claims, Plaintiffs have not shown that such discovery is necessary to adjudicate class certification issues. Moreover, there is no indication Kraft Foods relies upon changes in its product formulations to challenge class certification. Plaintiffs' motion will be denied without prejudice.

Request Nos. 23, 36: These requests seek information about pricing of and total profit from the sale of the products at issue. Plaintiffs argue that the requested information is necessary to "prove they can calculate damages on a class-wide basis." (JS at 35.) However, Plaintiffs do not explain how the requested information would be used in a damage analysis in this false advertising case. Plaintiffs cite an antitrust case in which an expert proffered common methods of showing class-wide impact of anticompetitive conduct by proof that the antitrust defendants charged higher than competitive prices. *Pecover v. Electronic Arts Inc.*, 2010 U.S. Dist. LEXIS 140632, at *63, *66 (N.D. Cal. Dec. 21, 2010). Plaintiffs cite another antitrust case in which the court stated that "[t]he question, then, is whether what [the expert] did do is sufficient to support a finding that the class was damaged by the price-fixing conspiracy and is sufficient to support a finding on a class wide basis of the amount or amounts of the overcharge." *In re Methionine Antitrust Litigation*, 2003 U.S. Dist. LEXIS 14828, at *10-*11 (N.D. Cal. Aug. 22, 2003). In contrast, Plaintiffs do not explain the role of any of the requested information in a proposed method of class-wide proof of injury or damages.

Request Nos. 30-34: Plaintiffs state that they would accept a "stipulation by which Kraft identifies for each of the past two years in which Kraft as complete information, (a) the percentage of United States sales of the products identified in the complaint that occurred in California, (b) the percentage of units of the products manufactured in California, and (c) a statement that the percentage of each did not vary by a material amount during the previous years of the proposed class period." (JS at 40 n.10.)

Kraft responded by stating that, in response to Request Nos. 30-31, none of the products at issue were manufactured in California. (*Id.* at 41.) In response to Request No. 32, Kraft Foods agreed to "provide its best estimate of the percentage of the products sold in the United States [that] were sold in California." (*Id.*) Kraft Foods has not located documents responsive to Request Nos. 33-34.

### *Interrogatories*

Interrogatory No. 1: This interrogatory requests that Kraft Foods identify all products it sold during the class period. Plaintiffs have made no showing that this information is relevant to the question of whether class certification is appropriate in this case.

Interrogatory No. 3: This interrogatory requests the precise amount of partially hydrogenated oil and trans fat for each product to the nearest one hundred milligrams and any changes. Plaintiffs argue that "Kraft's advertising is misleading because of the products' trans fat content." (JS at 45.) At this stage, Kraft will be ordered to state whether each product at issue (see footnote 1 above) contains

---

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 10-1028-GW (AGRx) | Date | July 25, 2011 |
| Title | Evangeline Red et al. v. Kraft Foods Inc., et al. | | |

partially hydrogenated oil and trans fat during the period 2006 to the present. Although Kraft Foods is correct that it has the option to produce business records, it must do so in a manner that satisfies Fed. R. Civ. P. 33(d).

Interrogatory Nos. 4-6: These interrogatories seek information regarding sales, cost of goods sold, and advertising expenses for the products at issue. Plaintiffs have not shown how this information is relevant to the issue of whether class certification is appropriate for the same reasons discussed above in connection with Document Request Nos. 23 and 36.

Interrogatory No. 11: This interrogatory seeks the identity of Kraft Foods' advertising agencies for the products at issue. Plaintiffs have not shown that this discovery is relevant to the class certification issue.

### Rule 30(b)(6) Deposition Topics

Topic No. 2 generally asks for the ingredients and formula of the products at issue. Plaintiffs argue that "any substantial differences in the formula of the products during the class period may exclude certain groups and/or require certain subclasses." (JS at 50.) There is no indication Kraft Foods relies upon changes in its product formulations to challenge class certification. Plaintiffs' motion will be denied without prejudice.

Topic Nos. 3-6, 11: Kraft Foods states that it stipulated that the products at issue were sold in all fifty states. (*Id.* at 53.) This stipulation obviates the need for topic no. 5. In all other respects, Plaintiffs have not shown that the topics – manufacture and distribution, sales figures, profit and revenue – are relevant to the issue of class certification.

Topic No. 8 is Kraft Foods' knowledge or research of the effects of Kraft PHVO products on consumers' health. Plaintiffs argue that this topic is relevant to "the question of whether the challenged advertisements were deceptive, or likely to deceive reasonable consumers." (*Id.* at 53-54.) Plaintiffs have not shown, however, that this topic is relevant to the question of class certification.

Topic Nos. 9-10: The only dispute about these topics appear to relate to the pre-2006 time frame which has already been addressed above. (*Id.* at 55.) Plaintiffs make no showing that the requested time frame for discovery is relevant to the issue of whether class certification is appropriate.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | |
|---|---|---|
| Case No. | CV 10-1028-GW (AGRx) | Date   July 25, 2011 |
| Title | Evangeline Red et al. v. Kraft Foods Inc., et al. | |

IT IS HEREBY ORDERED that Plaintiffs' motion to compel is GRANTED IN PART as follows:

1. On or before July 28, 2011, Kraft Foods is ordered to produce documents in response to Document Request No. 2 as agreed, and to provide its best estimate of the percentage of United States sales of the products at issue that were sold in California in response to Document Request No. 32.

2. In all other respects, Plaintiffs' motion to compel production of documents is denied without prejudice at this stage of the proceedings.

3. On or before July 28, 2011, Kraft Foods is ordered to answer Interrogatory No. 3 as modified by this order.

4. In all other respects, Plaintiffs' motion to compel further responses to interrogatories is denied without prejudice at this stage of the proceedings.

5. Plaintiffs' motion to compel Rule 30(b)(6) witnesses is denied without prejudice at this stage of the proceedings.

cc:   Parties

Initials of Preparer   mp

# EXHIBIT G

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED and RACHEL WHITT, on Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,<br><br>    Defendants. | No. CV10-01028-GW(AGRX)<br><br>**ORDER EXTENDING CLASS CERTIFICATION BRIEFING AND OTHER CASE DEADLINES**<br><br>Judge: Hon. George H. Wu |

Having considered the parties' May 26, 2011 Stipulation to Extend Class Certification Briefing and Other Case Deadlines, it is HEREBY ORDERED that:

1. Kraft Foods' Opposition to Plaintiffs' Motion for Class Certification is due July 28;

2. The class certification discovery cut-off is July 28, 2011;

3. Plaintiffs' Reply in Support of Class Certification is due August 24, 2011;

4. The mediation cut-off is August 31, 2011;

5. A post-mediation status conference will be held on **September 1, 2011 at 8:30 a.m.**;

6. A hearing on Plaintiffs' Motion for Class Certification will be held on **September 8, 2011 at 8:30 a.m.**;

7. Opening expert reports are due on September 30, 2011;

Case3:11-cv-02763-JSW   Document18-5   Filed08/19/11   Page31 of 33
Case 2:10-cv-01028-GW -AGR   Document 108   Filed 05/31/11   Page 2 of 2   Page ID
#:2621

8.  The cut-off for merits fact discovery is October 20, 2011;

9.  Rebuttal expert reports are due on November 2, 2011;

10. All discovery shall be completed by November 22, 2011, and discovery

    motions must be heard by November 22, 2011;

11. Summary judgment opening motions are due on December 20, 2011;

12. Summary judgment oppositions are due on January 10, 2012;

13. Summary judgment replies are due on January 19, 2012;

14. A hearing on summary judgment motions will be held on February 2,

    2012 at 8:30 a.m.;

15. The final pretrial conference will be held on **March 15, 2012 at 8:30**

    **a.m.**; and

16. The jury trial will begin on **April 10, 2012 at 9:00 a.m.**


DATED:  May 31, 2011

_The Honorable George H. Wu_
U.S. District Court Judge

# EXHIBIT H

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | |
|---|---|---|
| Case No. | CV 10-1028-GW(AGRx) | Date   January 31, 2011 |
| Title | *Evangeline Red, et al. v. Kraft Foods, Inc., et al.* | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Gregory S. Weston | Kenneth K. Lee |
| Elizabeth Lee Beck - by telephone | Dean N. Panos - by telephone |

**PROCEEDINGS:**      **SCHEDULING CONFERENCE**

The Court sets the following:

| | |
|---|---|
| Service of Written Discovery Requests & Deposition Notices | Immediately |
| Defendants' Responses to Plaintiffs' First Document Requests and Interrogatories Due | March 2, 2011 |
| Service of Defendant's Written Disc. & Depo Notices | March 3, 2011 |
| Plaintiffs' Motion for Class Certification Due | April 8, 2011 |
| Defendants' Opposition to Class Certification Due | June 3, 2011 |
| Plaintiffs' Reply in Support of Class Certification Due | June 30, 2011 |
| Mediation cutoff | July 6, 2011 |
| Post-Mediation Status Conference | **July 7, 2011 at 8:30 a.m.** |
| Discovery cutoff | July 8, 2011 |
| Hearing on Plaintiffs' Motion for Class Certification | **July 14, 2011 at 8:30 a.m.** |
| Opening Expert Reports Due | September 2, 2011 |
| Rebuttal Expert Reports Due | October 5, 2011 |
| All Discovery Including Discovery Motions heard | October 25, 2011 |
| Summary Judgment Opening Motions Due | November 22, 2011 |
| Summary Judgment Oppositions Due | December 13, 2011 |
| Summary Judgment Replies Due | December 22, 2011 |
| Hearing on Summary Judgment Motions | **January 5, 2012 at 8:30 a.m.** |
| Final Pretrial Conference | **February 16, 2012 at 8:30 a.m.** |
| Jury Trial | **February 28, 2012 at 9:00 a.m.** |

:   05

Initials of Preparer   JG